Moody *v.* Hutchinson.

MARY E. MOODY, *app't from a decree of the Court of Probate,*

*versus*

EBENEZER HUTCHINSON, *Creditor, Appellee.*

On appeal from a decree of the Court of Probate, the whole proceedings are again examinable in the appellate Court, so far as they are opened by any of the causes assigned, and new testimony may be had upon those issues.

Land warrants are not to be regarded as real estate by a Court of Probate.

APPLETON, J., heard the questions presented by the appeal at *Nisi Prius*, and EXCEPTIONS were taken to his ruling in matter of law. The facts in the case appear clearly in the opinion of the court.

*E. Kent*, for the appellant, argued in writing.

The appellant had a right to appeal, not merely *except* on point of law.

The judge is to make allowance out of the *personal* estate, as he shall judge necessary. Ch. 108, s. 18.

The right to appeal by any party aggrieved, is given by R. S., ch. 105, s. 18, and he may appeal therefrom to this court, which is the Supreme Court of Probate, and has appellate jurisdiction of all matters determinable by Judges of Probate. Ch. 96, s. 29.

When appealed from, the whole case is here, and this court is to determine what is a reasonable allowance. This is to be heard by the single presiding judge, as the law now is, subject to any exception as to his ruling of the law. The judge presiding ruled, upon examination of the case before him, that land warrants were to be considered real estate, and therefore, as the widow had been allowed all the personal estate except the land warrants, he affirmed the decree.

All that it was necessary to set forth in the exceptions, was enough to present the point of law.

The question here is only this, was the ruling of the judge

that the land warrants, named in the reasons for appeal, were real estate, and not personal.

The question fairly stated is, how are such land warrants to be treated in the settlement of estates under our laws.

I find that the definition of the words "land or lands," and the words "real estate," as given among the definitions in ch. 1, ss. 3 and 10, "shall be construed to include lands, all tenements and hereditaments connected therewith, and all rights thereto, and interests therein." Ch. 92, s. 23.

What is a land warrant? Not any *title* to any land. It is merely a certificate that A B "is entitled to locate 160 acres at any land office of the United States, in one body, and in conformity to the legal subdivisions of the public lands, upon any of the public lands subject to sale at either the minimum or lower graduated prices." This is the language quoted from a land warrant issued from the department at Washington.

If the estate had been solvent, would these land warrants have descended to the heirs, under ch. 93, as real estate?

I say that this land warrant is not a deed. The deed from the government is what is called a patent, issuing after a location, of a specific lot of land, set out by number, or metes and bounds. When that is delivered, a conveyance of real estate is perfected, and a title acquired. But until that is done no title passes, nor any interest in any particular lot of land.

The warrant is a mere voluntary permission on the part of the government to a man to locate—designate—set out a certain lot, out of unlocated lands, and when he has done so, to have a deed.

It resembles a bond for a deed, on performance of certain conditions. A gives B a bond, conditioned that he may, within twenty days, designate an acre from his farm, and upon such designation and location, he will give him a deed. This is a mere personal obligation. If he dies in five days, without locating, is that bond to be treated as real estate, to be administered upon as such? Clearly not. No title to

Moody *v.* Hutchinson.

real estate—no interest legal therein passes—no acre is secured.

The question in this case has particular reference to the estate of an insolvent. If these warrants are to be treated as real estate, they must be administered upon as real estate, and sold as real estate, to pay debts.

Ch. 112, s. 31, specifies what estate of a deceased person is subject to be sold. "Lands of which the testator or intestate died *seized in fee* simple or in fee tail, general or special." Did Mr. Moody die seized in fee simple of any of the United States lands? The *fee* remains in the United States until a deed by patent is granted.

So the statute regulating sales of real estate by guardians, and all other similar statutes, proceed upon the idea that the estate is a *real* estate, in specific portions of land, or interests in some particular piece of land.

So to of dower—ch. 95. If this is real estate the widow is entitled to dower. *Non constat* that it is wild land or will be—"it is any public lands subject to sale." It may be land from which immediate annual rent or products may be obtained. The prairie land of the west is not wild land, requiring clearing as ours. Now how can a widow's dower be set out on a land warrant? The husband has never been seized of any estate, any more than in the case of a bond, before named; and yet a widow is entitled to dower in *the lands* of her husband, whether he die seized or not. But he must have once been seized. But has the holder of a land warrant ever been seized of any 160 acres, so that the wife's right to dower attached?

If a land warrant is to be treated as real estate, what is to be the *modus operandi?* What is to be sold?—what deeded?—what bond to be given?—what becomes of the widow's rights. The administrator can give no deed of any specific land—can only assign the government bond—transfer a mere right to locate or to obtain a deed *in futuro.*

As personal estate, the course is plain and simple—to sell

and assign as *choses in action,* or debts of any kind, by note, bonds or simple obligation.

If it is said that the government at Washington treat them as real estate, I answer, that it is merely a regulation of the department, not a law of Congress. And this regulation is to the extent merely of requiring transfers and assignments to be made, with the *formalities* of real estate. Does not pretend to settle the law, but merely for security, and facility, and regularity, and convenience, directs as a department regulation merely, that in transfers the *forms* of real estate conveyances should be observed. And a department cannot enact laws. It can make regulations for its own department, if they are conformable to law. But it cannot, by any rule, change real into personal estate, or *vice versa.* Even then if the department had declared land warrants to be real estate, such declaration, beyond the mere requirement of form of assignment, would be inoperative and void.

The exact question, I suppose, is, whether this certificate or land warrant creates—gives *an interest* in land, or whether it is only a right to acquire such interest by doing certain acts—locating and designating.

Does a land warrant make the holder a tenant in common with the United States, of all unlocated lands, in the proportion of 160 acres to the whole unlocated lands?

It was decided by Judge McLEAN, *Dubois* v. *McLean,* 4 McLean R., 486, that the legal title to land held in Illinois, under a confirmation by the governor of that state, ratified by Congress, is not vested in the claimant until the issue of a patent.

I have looked into the Digest of United States Reports, and I find numerous cases, and all to this effect, that no title to any land or interest in any passes until a patent issues; that the warrant creates no legal interests in any land. 3 Texas R.; 12 vol. Digest, U. S., p. 396.

In *Wilcox* v. *Jackson,* 13 Peters R., it is said, " In this case no *patent* has issued, and therefore, by the laws of the United

States, the legal title has not passed, but remains in the United States." And also that no state law could constitutionally declare that it did pass.

In that case the land had been entered, and a register's certificate had been given. And in most of the cases where any question has arisen, the case shows an *entry* and register's certificate, and yet even after location and designation legally made, it has been repeatedly decided that no title passed until a patent issued.

The case of *Heald* v. *Hodgdon*, 16 Maine R., 219, shows that a mere certificate of a right to locate, confers no right until actual location.

*E. Hutchinson*, orally *per se.*

CUTTING, J. The Judge of Probate decreed, "That an allowance be made to the said Mary E. Moody, out of the personal estate of said deceased, of ten hundred and twenty-four dollars and sixty-three cents, in such articles as she may choose to that amount, according to the appraisement thereof in the inventory." From which an appeal is made to this court, for several reasons. *First*, because the allowance is insufficient, considering the degree and estate of her husband and the state of her family. *Second*, because, in estimating the amount of the personal estate, the judge erroneously determined that land warrants, granted by the United States and belonging to the estate, were real and not personal property. And three other causes, embracing in substance the two former. And it appears that the judge at *Nisi Prius*, before whom the appeal was heard, "decided that the land warrants are to be considered real estate, and thereupon affirmed the decree appealed from." To which ruling an exception is taken, and in this mode that question is presented to us.

By R. S., ch. 108, s. 18, the widow would be entitled, "besides her apparel and ornaments, to so much of the personal estate, as the judge shall determine to be necessary, according to the degree and estate of her husband, regard being

had to the state of the family under her care." Consequently her allowance must depend in some measure upon the value of the personal estate, since in no event can it exceed that amount. It became important, therefore, (or might if the case was properly presented,) that the judge should discriminate correctly in determining what was personal and what was real estate, which was borne upon the schedule of the intestate's property.

The act of Congress, of 1812, declares that, "In all cases in which land has heretofore, or shall hereafter, be given by the United States for military services, warrants shall be granted to the parties entitled to such land, by the Secretary of War, (now, by the act of 1850, by the Secretary of the Interior;) and such warrants shall be recorded in the said land office, in books to be kept for that purpose, and shall be located as is or may be provided by law; and patents shall afterwards be issued accordingly." And s. 8, that—"All patents issuing from the said office shall be issued in the name of the United States, and under the seal of the said office, and be signed by the President of the United States, and countersigned by the commissioner of said office; and shall be recorded in the said office, in books to be kept for the purpose."

From the foregoing provisions it would seem that the warrant conveys no title, but only establishes certain facts, such as, that the beneficiary has performed military services, and proved his claim to the bounty, and will be entitled to a patent for the specified number of acres in the otherwise unappropriated public lands, whenever the same should be located. It is in most respects similar to a bond for a deed. It is transferable, and usually passes from hand to hand like bonds and scrips of corporations, by an assignment, without the formality of registration; and the patent is granted to the person who makes the location, and produces the necessary evidence to the department that he holds the warrant. And by the act of 1852, such warrants are made not only assignable, but receivable in payment of pre-emption rights.

Before the patent issues the fee is in the government; after-wards it passes to the grantee. *Bagnell* v. *Broderick*, 13 Peters, 450.

If the fee does not pass upon the delivery of the warrant, then nothing can pass except the obligation of the govern-ment, which is a chose in action, and although not capable of being enforced by an action at law against the govern-ment, the warrant is none the less an executory contract. It is neither "lands, tenements, or hereditaments, or any rights to or interests therein," but only one of the progress-ive stages in such an acquisition.

But assuming that land warrants are not *evidentia* of title to real estate, it is contended, and the case shows, upon a hearing of this appeal, the appellee objected, that the decree and the record of the probate judge and reasons of appeal did not present that question.

It is true that on an appeal from the Probate Court, the whole proceedings are again examinable in the appellate court, so far as they are opened by any of the causes as-signed, and new as well as the former testimony may be in-troduced touching those issues, which are in this case: *first*, as to the sufficiency or insufficiency of the allowance; and, *secondly*, as to the right or wrong conclusion in relation to the character of the warrants, which issues are virtually syn-onymous, since the former is or may be dependent on the latter.    And it may be contended by the appellee, *that* it does not appear from the facts disclosed, otherwise than from the probate decree, that the intestate left any estate, either real or personal, or what was the degree or estate of the in-testate, or the state of the family under the appellant's care; *that* it would not necessarily follow, because the judge erred in relation to his construction of the warrant, that the allow-ance was insufficient; *that* reasons of appeal, which are founded on allegations of fact that do not appear upon the record, and of which no proof has been offered, cannot be maintained—citing *Lamb* v. *Lamb*, 11 Pick., 374; *that* there is no evidence reported, which would exclude the idea, that

the ruling excepted to was not based upon an abstract question of law, which heretofore has not been entertained by this court—citing *Hopkins* v. *Fowler*, 39 Maine R., 570, and *Dyer* v. *Huff*, 43 Maine R.

The foregoing propositions lead to another inquiry, in order to ascertain whether this case has been so defectively presented as to render the exception a nullity; and that inquiry is, as to what the record does disclose. The bill of exceptions states, among other things, that the Judge of Probate allowed the appellant the sum before mentioned, and further finds that it was "all the personal property." And further, that the court "decided that the land warrants are to be considered as real estate." From which we are authorized to infer, as indeed the bill discloses, that there was on trial a recognition of personal property and *the* land warrants; *that* the judge presiding, in his haste to dispatch the business of the term, in anticipation of the regular progress of the cause, on inquiry of counsel, ascertained the real point in dispute, and for the purpose of presenting the question to the full court, ruled accordingly. And in the *present* instance we can readily perceive that such a course might not operate unjustly; for if the warrants were evidential of the realty, the appellant had by the decree received all she was entitled to by statute; and such being the opinion of the presiding judge, whether ascertained by information, anticipation, or otherwise, any evidence as to the number and value of the warrants and condition of the family would have been superfluous. It is sufficient for us to be informed of record, that "the land warrants" composed part of the assets of the estate, in order to determine that the ruling was no abstraction. And inasmuch as the exceptions refer to and embrace *the land warrants*, and in consequence of the ruling "thereupon the decree appealed from was affirmed," and the ruling being found to have been erroneous, for the purpose of correcting such error, the appellant is entitled to a new trial.

*Exceptions sustained.*